IN THE U. S. DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**LINDA L. SCOTT, Individually and
on Behalf of Others Similarly Situated**               **PLAINTIFFS**

**versus**                         **CIVIL ACTION NO. 1:09-cv-212-HSO-JMR**

**CABLE ONE, INC.**                                      **DEFENDANT**

**AMENDED COMPLAINT
(CLASS ACTION)
(JURY TRIAL REQUESTED)**

COMES NOW the Plaintiff, LINDA L. SCOTT, by and through undersigned counsel, and brings this action individually and on behalf of others similarly situated against the Defendant, CABLE ONE, INC., and in support thereof would show unto this Honorable Court the following, to-wit:

**PARTIES**

1.

The Plaintiff, Linda L. Scott, is an adult resident citizen of Jackson County, Mississippi.

2.

The Defendant, CABLE ONE, INC., is a foreign corporation authorized to do business in the State of Mississippi which provides premium cable services to residences all along the Mississippi Gulf Coast. Said Defendant may be served with process by service upon its registered agent, CT Corporation System, 645 Lakeland Drive East, Flowood, MS 39232.

3.

Plaintiff and others similarly situated are and have been subscribers of digital cable television services provided by Cable One for a number of years.

4.

Plaintiff and others similarly situated have no choice but to pay a rental fee for a " digital cable box" in order to view digital cable for which they pay a separate fee. Further, Plaintiff and others similarly situated have no choice but to contract with Cable One for digital cable television services. Plaintiff, Linda Scott, pays $23.00 a month, totaling $276.00 a year for the box rental.

5.

Cable One's actions in forcing the rental of the cable box constitute an unlawful tying arrangement resulting in an impermissible restraint of trade, in violation of both state and federal law.

6.

The activities of Cable One have and will continue to threaten to have substantial adverse competitive effects upon both interstate commerce and upon commerce within the State of Mississippi.

**FACTUAL ALLEGATIONS**

7.

Cable One serves approximately 720,000 customers in 19 States and has grown to the 10th largest traditional cable company.

8.

Cable One provides cable-based services, include cable television, high-speed internet, and telephone customers in several states. Further, on information and

belief, Cable One has more than a 50% share of the cable television market on the Mississippi Gulf Coast.

9.

Cable One is a wholly owned subsidiary of the Washington Post Company, a diversified media and education company headquartered in Washington, DC. The corporate headquarters for Cable One are in Phoenix, AZ. Cable One has developed, managed and operated cable systems since 1986.

10.

Cable One classifies its operations in two reportable segments: Cable and Programming. Cable One's cable segment, which generates a portion of its consolidated revenues, manages and operates its cable systems, including video, high-speed internet and telephone services, as well as its regional sports and news networks.

11.

Customers that subscribe to Cable One's digital cable services (such as Linda Scott) pay a monthly fee for cable.

12.

Plaintiff, Linda Scott, and other customers who elect to receive digital cable services receive specialty programming by way of their cable box.

13.

In addition to paying a fee for cable, customers such as Linda Scott that pay for premium channels must also pay a rental fee to Cable One for a digital cable box. On information and belief, the digital cable box is required in order for customers such as

Plaintiff, Linda Scott, to view the premium channels. In other words, premium channels can only be viewed by Cable One customers if the customers also have a digital cable box.

14.

Cable One requires customers such as Linda Scott to rent a cable box directly from it and not other sources, even though cable boxes are available on the open market that would readily permit Cable One customers to view the premium channels offered by Cable One. Thus, Cable One ties its premium channel cable service with the cable box that it requires customers such as Linda Scott to rent. Importantly, the premium channel cable service and the cable box are separate and distinct products.

15.

Although cable boxes are manufactured by numerous entities, upon information and belief, the market is dominated by Scientific Atlantic and Motorolla, companies that provide cable boxes to Cable One and a small group of other cable providers. If not for the tying of products, customers such as Linda Scott could purchase a cable box from a manufacturer of their choice and use it to view the premium cable channels provided (for a cost) by Cable One.

16.

The choice to use other cable boxes, however, is not available to Linda Scott and other Cable One customers as a result of Cable One's practice of tying its premium channel cable service with the cable box. By its conduct, Cable One coerces Linda Scott and its premium cable customers to pay a significantly larger sum of money that would be required if the two distinct products (premium cable and cable box) were not tied by Defendant. Indeed, in a matter of months, the rental fees that

customers such as Linda Scott are forced to pay for the cable boxes supplied by Cable One greatly exceed their worth.

17.

Cable One is simply purchasing cable boxes at a fixed and relatively low cost from certain manufacturers, only to turn around and rent the very same boxes to customers such as Linda Scott, with full knowledge that customer such as Linda Scott, as a result of Cable One's improper conduct, has no choice but to pay the rental fees charged by Cable One.  Upon information and belief, the market for cable boxes involves a significant and not insubstantial amount of interstate commerce.

18.

The improprieties of tying cable services to rental of a cable box has been investigated by the Federal Communications Commission ("FCC"), which has long recognized the lack of competition in the cable industry, resulting from monopolistic actions of cable companies.  As such, the FCC adopted a regulation requiring the cable industry to separate the descrambling and other security capabilities of a cable box and place the capabilities in a separate device which is called a CableCARD.

19.

A CableCARD is a credit card-size device which performs the same "security" and "descrambling" functions provided by set-top cable boxes.  Cable One, and all other cable operations, are required by FCC rules to make CableCARD devices available to consumers.

20.

Despite the FCC rules and related pronouncements, Cable One still promotes the cable boxes as superior to the just recently available CableCard. For instance, Cable One's website informs its customers: "**they**

**cannot access any features such as 140+ channels, program guide, pay-per-view services, 18+ premium channels, 30+ digital music channels,**" without a cable box. (Emphasis added.)

21.

In addition to all of these representations, in the event that customers elect to use the CableCARD devices, they must lease the device from Cable One (just as they are required to if they elect to use the cable box). Cable One's actions allow it to unfairly utilize its market power/economic power and/or monopoly in the Mississippi market, thereby harming customers such as Linda Scott.

22.

Furthermore, in violation of Section 623(b)(7)(A) of the Communication Act of 1934, as amended, 47 USC 81 543(b)(7)(A), 17 USC 521, Section 601, the Telecommunication Act of 1996 and the 1984 Cable Act by failing to provide and/or indicate to the public a "basic level" of programming available to all of the general public which carries the required PBS and local stations. Such programming was available throughout the service area in the 1990's. The service provided minimum cable channels for about $10 a month. However, with the increased competition from satellite into the area, Cable One ceased to make this service available and increased its basic level of service to an expanded basic package for a charge in excess of $30 a month. The sole purpose of this price change was to effectively not allow customers to get their local channels on cable and subscribe to satellite TV for expanded services. This move gave Cable One a virtual monopoly on "cable" service on the Mississippi Gulf Coast as it required satellite customers to seek "waivers" to receive local channels

and make the combination of services economically unviable. As a matter of fact, Plaintiff recently received a rate change notification from Cable One that effective in June, Cable One will adjust the rate of basic cable to $50.00. (See copy of notice attached as Exhibit "A".)

23.

Additionally, customers were advised that basic cable had been discontinued, and despite Cable One's protestation now to have such a product, no information is available on this product anywhere from Cable One or its web site or otherwise. It is believed that this service, just like its supposed card service, is discouraged, denied and not supported by Cable One to its employees on a regular basis. Hence, such service, if it even exists, is effectively thwarted by the anti-competative and anti-consumer friendly behavior of Cable One and its employees in a deliberate, coordinated manner in violation of U. S. and State law.

**COUNT I**
**(Violation of the Sherman Anti-Trust Act- Unlawful Tying)**

24.

Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

25.

Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, makes it unlawful to enter into a contract in restraint of trade or commerce. Congress has granted a private right of action to those injured in violation of this provision.

26.

Linda Scott seeks to redress for Cable One's violation of Section 1 of the Sherman Anti-Trust Act.

27.

Cable One improperly ties and bundles its premium cable service with the necessary rental of a digital cable box.  Specifically and as explained above, Cable One contracted with customers such as Linda Scott to provide cable service but only on the condition that she also rent a digital cable box from Cable One.

28.

As a result, Linda Scott cannot unbundle the tied products (the premium cable service and the cable box).

29.

Instead, customers such as Linda Scott are forced to pay rental fees for the cable box, in addition to fees for cable service.  Cable One's conduct is particularly acute and egregious, given it is one of the largest cable service providers on the Mississippi Gulf Coast and the entire United States.

30.

Cable One has, at all times relevant to this action, maintained sufficient economic power in the cable market to coerce Linda Scott to lease and/or accept the tied product (the cable box).

31.

Cable One's improper tying and bundling harms competition.  Upon information and belief, just two manufacturers of cable boxes dominate the industry and they provide most of their products to Cable One and a small group of other cable service providers.  Since customers such as Linda Scott can only lease cable boxes directly from Cable One, there is little motivation for other manufacturers to enter the market, and those that do are foreclosed from renting and/or selling cable boxes directly to customers such as Linda Scott at a lower, market-driven, cost.

32.

There is a market for cable boxes that is separate and apart from the market for Cable One cable services. The two items (cable service and the cable box) are distinct and separate items.

33.

Cable One has, at all times relevant to this action, maintained sufficient economic power in the cable market to coerce customers such as Linda Scott to lease and/or otherwise accept the tied product (the cable box) that they would not otherwise lease or accept from Cable One. This economic power will continue absent the relief sought herein.

34.

Cable One's conduct at issue involves a substantial amount of interstate commerce in the market for cable boxes and related markets.

35.

Cable One's tying and bundling of its cable service and cable boxes constitutes an unreasonable restraint of trade that is unlawful under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1.

36.

Cable One's tying and bundling activities have an adverse impact upon cable consumers and competition.

37.

There is no lawful business justification for Cable One's actions.

**COUNT II**
**(Violation of Unfair Trade Practices and Consumer Protection Laws)**

38.

This cause of action is brought on behalf of Linda Scott and others similarly situated pursuant to the Unfair Trade Practices and Consumer Protection Law afforded to the citizens of Mississippi.

39.

Plaintiff alleges that Cable One committed the unethical, oppressive, unscrupulous, and substantially injurious actions to customers such as Linda Scott as explained, discussed, and set forth in detail above.

40.

Cable One's actions, as described in detail above, have a capacity, tendency and/or likelihood to deceive or confuse customers such as Plaintiff.

41.

Defendant has committed unlawful business practices in connection with providing cable services to the general public and Plaintiff.

42.

Cable One's actions, as discussed above, have a capacity, tendency or likelihood to deceive or confuse customers such as Plaintiff regarding its cable services.

43.

The unlawful, unfair and illegal acts and practices of Cable One, as explained and discussed above, present a threat to customers such as Linda Scott in that Cable One is able to carry on its unlawful scheme without suffering the consequences of legal action and violations of law.

44.

Linda Scott is informed and believes and thereon alleges that Cable One continues these unlawful, unfair and/or fraudulent business practices alleged herein.

45.

Cable One's actions constitute an unlawful, unfair or fraudulent business practice within the meaning of unfair trade practices and Consumer Protection Laws. Customers such as Linda Scott and the general public were, and are likely to be, deceived by Cable One's actions discussed above.

46.

Linda Scott has suffered an ascertainable loss of money from the actions of Cable One as detailed above, and she has a private right of action for this unfair trade practice. Linda Scott seeks an order restoring her lost monies, interest as well as any other allowed damages for this cause of action.

47.

Customers such as Linda Scott may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unlawful, unfair and deceptive acts and practices of Cable One, as described above, present a serious threat to customers such as Linda Scott.

48.

As a result of Cable One's violation of Unfair Trade Practices and Consumer Protection Laws, Sherman Anti-Trust Act, 15 U.S.C. § 1 and any other causes of action proven at trial, Linda Scott is entitled to restitutive damages for the out-of-pocket expenses and economic harm suffered.

49.

Plaintiff is further entitled to pre-judgment interest as a direct and proximate result of Cable One's wrongful conduct. The amount of damages suffered by Plaintiff as a result of said acts was a sum certain and capable of calculation, and Plaintiff is entitled to interest in an amount to be set forth according to proof.

## COUNT III

## (CLASS ACTION ALLEGATIONS)

50.

This action satisfies prerequisites for maintenance as a class action set forth in Rule 23, F.R.C.P., as set below.

51.

***Class Definition.***  Plaintiff brings this action individually and on behalf of the following class of similarly situated persons (the "Class"), including subclass, of which Plaintiff is a member:

> Persons throughout the United States who reside in geographic areas where Cable One has a more that 50% share of the digital cable television market, who subscribe to Cable One's digital cable television service during the applicable statute of limitations period(s) and who were required to and did pay a monthly fee to Cable One for the use of a set-top box.
>
> **Mississippi Subclass**
>
> Persons throughout the State of Mississippi who reside in geographic areas where Cable One has a more that 50% share of the digital cable television market, who subscribe to Cable One's digital cable television service during the applicable statute of limitations period(s), and who were required to and did pay a monthly fee to Cable One for the use of a set-top box.

Excluded from the class are Defendant and any of its officers, directors or employees, the presiding Judge, and any member of their immediate families.  Plaintiff hereby reserves the right to amend the above class definition based on discovery and the proofs at trial.

52.

***Numerosity***.  The members of the Class are so numerous and geographically dispersed across the State of Mississippi and throughout the United States such that joinder of all members is impracticable.  Plaintiff believes that there are thousands of

people in the Class. The exact number and identity of Class is unknown to Plaintiff at this time, and can only be ascertained from Cable One's books and records.

53.

**_Commonality._** There are questions of law or fact common to the Class, including, but not limited to, the following:

a. whether Defendant's acts and omissions alleged herein constitute a violation of Section 1 the Sherman Antitrust Act, 15 U.S.C. § 1;

b. whether Defendant's acts and omissions alleged herein constitute a violation of Section 2 the Sherman Antitrust Act, 15 U.S.C. § 1;

c. whether Defendant's acts and omissions alleged herein constitute a violation of Unfair Trade Practices and Consumer Protection Laws;

d. whether a declaratory judgment providing that Defendant violated the above-referenced law is appropriate;

e. whether Plaintiff and the members of the Class have sustained damages and, if so, what is the proper measure of those damages; and

f. whether Plaintiff and the members of the Class are entitled to the relief sought, including injunctive relief and attorney's fees.

54.

**_Typicality._** The claims of Plaintiff are typical of the claims of the Class, alleged herein.

55.

**_Adequacy._** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained the undersigned counsel, who are competent and experienced in the prosecution of complex, class action litigation. The interests of the Plaintiff are aligned with, and not antagonistic to, those of the Class.

56.

The prerequisites to maintaining a class action for injunctive and equitable relief are satisfied, because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole.

57.

The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards for conduct for Defendant. For example, one court might decide that challenged actions are illegal and enjoin them, while another court might decide that those same actions are not unlawful. Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

58.

Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

59.

Defendant's alleged uniform scheme and common course of conduct make declaratory relief with respect to the Class as a whole appropriate.

60.

***Rule 23, Federal Rules of Civil Procedure Requirements***. This case satisfies the prerequisites of Rule 23. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

61.

The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

62.

This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff, LINDA SCOTT, prays for a judgment against Cable One as follows:

a. For an order that Cable One violated Section 1 of the Sherman Act;

b. For and Order that Cable One violated Unfair Trade Practices and Consumer Protection Laws;

c. For all recoverable compensatory and other damages sustained by Plaintiff;

d. For all statutory damages available under the claims asserted;

e. For payment of costs of suit herein incurred;

f. For both pre-judgment and post-judgment interest on any amounts awarded;

g. For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

h. For such other and further relief as the Court may deem proper.

RESPECTFULLY SUBMITTED this, the 15<u>th</u> day of May, 2009.

          LINDA L. SCOTT, Individually and on Behalf of Others Similarly Situated, Plaintiff

          By and Through Her Attorneys, LUCKEY & MULLINS, PLLC

          BY:   /s/ Stephen W. Mullins
               STEPHEN W. MULLINS

STEPHEN W. MULLINS (MS Bar No. 9772)
LUCKEY & MULLINS, PLLC
2016 Bienville Boulevard, Suite 102  (39564)
Post Office Box 990
Ocean Springs, MS  39566
(228) 875-3175
(228) 872-4719  (fax)

## **C E R T I F I C A T E**

I, STEPHEN W. MULLINS, do hereby certify that I have this date electronically filed the above and foregoing Amended Complaint with the Clerk of this Court using the ECF system which sent notification of such filing to registered counsel of record.

THIS, the 15<u>th</u> day of May, 2009.

                             /s/ Stephen W. Mullins
                             STEPHEN W. MULLINS